FAXED 10/23/03

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

RYAN, BECK & CO., LLC.

                Plaintiff,

     -against-

YOUSSEF FAKIH, et al.,

                Defendants.
---------------------------------------------------------------x

MEMORANDUM AND ORDER

02-CV-4052 (RLM)

FILED
IN CLERK'S OFFICE
U.S. _____ N.Y.
★ OCT 24 2003 ★
P.M. _____
TIME A.M. _____

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

At the outset of a settlement conference scheduled for September 25, 2003, several journalists entered the courtroom and counsel for plaintiff Ryan, Beck & Co., LLC ("plaintiff") asked that members of the press and the public be excluded from the proceeding. Counsel for the remaining defendant, Perry Reich ("defendant"), joined in plaintiff's application. Following a brief discussion on the record, plaintiff's counsel requested leave to brief the issue, and the Court set a schedule for such submissions. Only plaintiff has complied; the Court has received nothing from any representative of the media.

For the reasons that follow, any further settlement conferences in this case will be closed to the public and the press.

## DISCUSSION

### I. Plaintiff's Contentions

Plaintiff argues that, for several reasons, plaintiff's counsel "cannot fairly represent [his] client and engage in the dialogue invited by the Court if the press is present." Affidavit of Joel E. Davidson, dated October 1, 2003, at ¶ 3. First, plaintiff notes the existence of a

series of related cases and arbitrations; according to plaintiff, the concern that publicly disclosed statements may be used against plaintiff in other proceedings will inhibit the parties' settlement discussions in this case. See id. at ¶ 3. Additionally, plaintiff observes that portions of the discovery materials in this and/or the related proceedings were produced pursuant to confidentiality orders. See id. at ¶ 5. Plaintiff complains that it would be "impossible" for counsel to "present a coherent explanation of the background and other events involving this case in any kind of coherent manner without referring to confidential information . . . ." Id.

## II. Governing Case Law

The controlling Second Circuit decision on the confidentiality of settlement negotiations is United States v. Glens Falls Newspapers, 160 F.3d 853 (2d Cir. 1998), aff'g United States v. Town of Moreau, 979 F.Supp. 129 (N.D.N.Y. 1997). There, a local newspaper sought to intervene in a CERCLA action in order to move to vacate a protective order that rendered all settlement materials confidential, and the district court judge denied intervention. On appeal, the Second Circuit upheld the lower court's ruling after applying the criteria laid out in United States v. Amodeo, 71 F.3d 1044 (2d Cir. 1995) ("Amodeo II"), and balancing the presumption of public access against countervailing factors, such as the impact of public disclosure on the performance of Article III functions. See Glens Falls Newspapers, 160 F.3d at 857-58.

As an initial matter, the Second Circuit agreed that "'the presumption of public access to settlement conferences . . . is very low or nonexistent under either constitutional or common law principles.'" Glens Falls Newspapers, 160 F.3d at 855 (quoting Town of Moreau, 979 F.

2

Supp. at 136); see Glens Falls Newspapers, 160 F.3d at 857 ("access to settlement discussions . . . has no value to those monitoring the exercise of Article III judicial power by the federal courts," because such discussions are not "'presented to the court to invoke its powers or affect its decisions.'" (quoting Amodeo II, 71 F.3d at 1050)); see also SEC v. TheStreet.Com, 273 F.3d 222, 233 (2d Cir. 2001).

The Second Circuit next considered countervailing factors that militated against public access to settlement discussions. See Glens Falls Newspapers, 160 F.3d at 857 (citing Amodeo II, 71 F.3d at 1050). In particular, the Court addressed whether settlement efforts would be chilled if the process were opened to the public. See Glens Falls Newspapers, 160 F.3d at 857-58. In answering that question in the affirmative, the Second Circuit observed that, as counsel would be reticent to make publicly circulated concessions, "'[f]ew cases would ever be settled if the press or public were in attendance at a settlement conference . . . .'" Glens Falls Newspapers, 160 F.3d at 858.

Although not addressed in Glen Falls Newspapers, another countervailing factor to be weighed in the balance is the extent to which the information to which access is sought was disclosed pursuant to a protective order. As the Second Circuit has long acknowledged, protective orders promote early and amicable settlements of disputes and encourage witnesses to provide information that otherwise might not be made available in discovery. See TheStreet.Com, 273 F.3d at 230; Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 295-96 (2d Cir. 1979); see also SmithKline Beecham Corp. v. Synthon Pharms. Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002) (if protective orders are easily modified, "in the long run, parties may

begin to distrust protective orders" and "[d]iscovery, in turn, will become more complicated and expensive and settlements will be more difficult."). Accordingly, a strong presumption against public access applies to materials produced "under protective order when there was reasonable reliance upon such an order . . . ." TheStreet.Com, 273 F.3d at 231 (citing Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2044.1 (2d ed. 1994)).

### III. Performing the Balancing Test in this Case

Here, as in Glens Falls Newspapers, little or no presumption of public access attaches to the settlement conference at issue. On the other side of the balance, public access to the proceeding is likely to inhibit the kind of frank discussion that is critical to any settlement negotiation. Moreover, the parties' reliance during discovery on judicially approved confidentiality orders further warrants exclusion of the public and the press from any settlement conferences. The presence of outsiders at such a proceeding would run the risk that an attorney might either inadvertently violate the provisions of a confidentiality order or engage in self-censorship, thereby impeding fruitful settlement discussions.

### CONCLUSION

For the reasons discussed above — and particularly given the parties' agreement and the media's apparent abandonment of its request to attend the settlement conference -- this Court concludes that the public interest in settling this case, as well as the concern for preserving the confidentiality of information produced in reliance on a protective order, heavily outweighs any presumption of access, which in this case is extremely low if not lacking

entirely. Therefore, all settlement conferences in this case are ordered closed to the public and to the press.

        SO ORDERED.

Dated:    Brooklyn, New York
            October 23, 2003

                                      ROANNE L. MANN
                                      UNITED STATES MAGISTRATE JUDGE